**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| BROOKE N. SOMERS, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 23-0102-BAH |
| ANTHONY DEVINE *et al.*, | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

After a series of events related to a school board meeting in Cecil County, Maryland, in

February 2022, Plaintiff Brooke N. Somers ("Plaintiff") filed this suit against Defendants Anthony

Devine ("Devine"), John Roush ("Roush"), Robert Joseph Buckley ("Buckley"), Cecil County,

Maryland (the "County" or "Cecil County"), the Town of Elkton, Maryland (the "Town" or

"Elkton"), and the Board of Education of Cecil County, Maryland (the "Board" and, collectively,

"Defendants"). ECF 30. Pending before the Court today are four motions to dismiss Plaintiff's

amended complaint, ECF 30: Elkton's motion to dismiss counts one and two, ECF 34; Devine's

motion to dismiss or, in the alternative, for summary judgment, ECF 39; Cecil County's motion to

dismiss or, in the alternative, for summary judgment, ECF 41; and a motion to dismiss or, in the

alternative, for summary judgment filed jointly by Defendants Roush, Buckley, and the Board,

ECF 42. Plaintiff opposed all four motions, ECFs 36, 45, 52, 49, and all Defendants filed replies

in support, ECFs 44, 53, 54, 55. All filings include memoranda of law and exhibits.[1] The Court

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, all four motions are GRANTED.

## I. BACKGROUND

The events that gave rise to this case began on February 9, 2022.[2] That evening, the Board of Education of Cecil County held a public meeting in a Board-owned administrative building in Elkton, Maryland. ECF 30, at 4. At the time of the meeting, state emergency regulations relating to the Covid-19 pandemic required that "[a]ll individuals [] cover their nose and mouth with a face covering while inside a school facility" unless they met one of thirteen enumerated exemptions. Md. Code Regs. ("COMAR") 13A.01.07.03(A)[3] (2022) ("the mask requirement"). One of the exemptions to the mask requirement was for "[a]ny person with a physical or mental impairment documented by a physician as preventing the person from safely wearing a face covering." COMAR 13A.01.07.03(B)(3) (2022).

### A. Plaintiff arrives at the meeting and immediately clashes with Defendants Roush and Devine.

Plaintiff, a resident of Elkton, arrived at the meeting at 6:03 p.m., just three minutes after it began. ECF 30 at 5. She was not wearing a mask. *Id.* At the entrance to the room where the meeting was being held, Plaintiff was met by Defendants Roush and Devine. *Id.* Roush was present in his capacity as Director of Student and School Safety for Cecil County Public Schools and Devine, a law enforcement officer for the Elkton Police Department, was assisting Roush. *Id.* Plaintiff informed Roush and Devine that she had medical documentation of a health condition

---

[2] The facts in this section are taken from the First Amended Complaint, ECF 30, unless otherwise stated.

[3] Note that this regulation expired later in 2022 and was repealed in 2023; this COMAR provision no longer pertains to Covid-19 measures or masking. *See* COMAR 13A.01.07.03 (2023).

that exempted her from the mask requirement. *Id.* Roush and Devine asked Plaintiff to produce the medical documentation. *Id.* at 5–6.

Plaintiff returned to her car, first to get her medical letter, and a second time to retrieve her identification at the request of Roush and Devine. *Id.* The letter she provided was dated June 11, 2021, signed by a nurse practitioner, and read:

> [Plaintiff] is a patient of CCHS Primary Care at Elkton practice. [Plaintiff] states that she is unable to wear mask [sic] due to difficulty breathing when wearing mask [sic] and it is also causing her anxiety. Her symptoms are exacerbated due to the pregnancy.[4] She does have a documented history of anxiety and depression.

ECF 42-2, at 1; *see also* ECF 30, at 5 (summarizing content of medical letter). Devine told Plaintiff that her note was not sufficient to prove that she was exempt from the mask requirement. ECF 30, at 6. Plaintiff argued with Devine, making statements such as, "This is ridiculous," and, "Why are you so devoted to that muzzle?" *Id.* Eventually, Plaintiff repeated her request to enter the meeting, saying, "Please, I just want to sit and listen. This is my county. This is my school district. I have a right to be involved." *Id.* (punctuation adjusted). Devine informed Plaintiff that she could not enter the meeting without a mask and instead told her that she could watch the meeting on a live stream in the lobby of the building, where several other unmasked attendees were already watching. *Id.* at 6–7.

Plaintiff again began arguing with Roush and Devine, saying, "This is so dangerous that you think like that and you wear that [badge]. I'm not here to cause a problem. I'm pretty sure I should be able to go in and sit down." *Id.* at 7 (punctuation adjusted). Devine responded by saying, "We're telling you that is not going to happen." *Id.* After additional back-and-forth regarding

---

[4] Though Plaintiff was evidently pregnant at the time the note was written, she was not pregnant during the events that gave rise to this case. *See* ECF 30 at 9 (explaining that Plaintiff had recently had stitches removed from her abdomen that were a result of a caesarean section); *id.* at 30 (describing Plaintiff as "a recent mother").

Plaintiff's ability or inability to wear a mask, Plaintiff took Devine's picture on her cellphone with Devine's consent. *Id.* She then sat down with four other unmasked attendees in the lobby, while Devine and Roush entered the room where the meeting was being held. *Id.* at 7–8. According to the complaint, "[w]hile the group of people in the lobby engaged in normal conversations, at no time could the conversations be heard from inside the meeting room and at no time was the board meeting disrupted." *Id.*

### B. Officer Devine arrests Plaintiff.

Forty minutes later, Devine returned to the lobby and told the unmasked attendees to "keep it down." ECF 30, at 8. According to Plaintiff, there was no reason for this warning, as "the board meeting was never disrupted, noise from the lobby could not be heard inside the meeting room, and no one inside the meeting room appears to have heard anything in the lobby prior to [D]efendant Devine's unnecessary instruction to the group." *Id.* In response to Devine's warning, Plaintiff said, "No." *Id.*

Devine then instructed Plaintiff to leave the building. *Id.* at 9. Plaintiff refused. *Id.* Devine told Plaintiff to leave or be arrested, and Plaintiff again refused to leave. *Id.* Devine then informed Plaintiff that she was under arrest. *Id.* Plaintiff recorded Devine during the arrest. *Id.* According to Plaintiff, Devine effected this arrest by physically pulling Plaintiff from her chair, "throwing" her to the ground, twisting her arms behind her back, pushing his knee into her back, and handcuffing her. *Id.* He also seized her phone. *Id.*

After her arrest, Plaintiff was placed in a jail cell at the police department for roughly five hours, during which time she was unable to contact any of her loved ones. *Id.* Devine then "placed [P]laintiff in a leather restraining belt with her hands cuffed to the belt" and took her to the courthouse to meet with the county commissioner. *Id.*

4

Devine informed Plaintiff that she was required to wear a mask while speaking with the commissioner.[5] *Id.* Plaintiff reiterated her opposition to wearing a mask, again citing her health. *Id.* Several individuals in the courthouse were not wearing masks when Devine and Plaintiff arrived. *Id.* Devine obtained a mask from the security desk for Plaintiff and asked, "Do you want to put it on, or do you want me to put it on you?" *Id.* According to the complaint, when Plaintiff refused to put the mask on, Devine put the mask on Plaintiff, knocking her to the ground in the process. *Id.* Devine required Plaintiff to remain sitting on the floor for approximately seven minutes until a commissioner could be summoned to the lobby. *Id.* Ultimately, Plaintiff was charged with six criminal offenses:

> [Count 1] Willful disturbance of school activities in violation of Md. Education Code § 26-101(a); [Count 2] Trespassing on school property in violation of Md. Education Code § 26-102(e); [Count 3] Disturbing the public peace in violation of Md. Criminal Law Code § 10-201(c)(2); [Count 4] Failure to Obey a Lawful Order in violation of Md. Criminal Law Code § 10-201(c)(3); [Count 5] Resisting arrest in violation of Md. Criminal Law Code § 9-408(b), and [Count 6] Trespassing on private property in violation of Md. Criminal Law Code § 6-403(b).

*Id.* at 11.

---

[5] Plaintiff claims in the complaint that "masks were [] optional in the courthouse" at the time and cites to "the Ninth Administrative Order Clarifying COVID-19 Health Measures in Courthouses and Judicial Branch Facilities entered by the Court of Appeals of Maryland on August 6, 2021." ECF 30, at 10. The Court takes judicial notice that the actual administrative order in question indicates that masks were optional for those who were fully vaccinated, and only when the transmission rate in the relevant district was "moderate" or "low" for at least fourteen days. Court of Appeals of Maryland, Ninth Administrative Order Clarifying COVID-19 Health Measures in Courthouses and Judicial Branch Facilities (Aug. 6, 2021), https://www.courts.state.md.us/sites/default/files/admin-orders/20210806ninthorderclarifyingcovid19healthmeasuresincourthousesandjudicialbranchfacilities.pdf [https://perma.cc/Z84R-Z3HN] (archived). No claims are made regarding the transmission level in Cecil County at the time of these events nor about Plaintiff's vaccination status at the time.

**C.    Buckley issues a "No Trespassing" letter to Plaintiff.**

Five days after the fateful school board meeting, on February 14, 2022, Buckley, in his

capacity as Associate Superintendent for Administrative Services for Cecil County Public Schools,

sent a "No Trespassing" letter to Plaintiff informing her that she "[would] no longer be allowed on

Cecil County Board of Education premises" and that the Board "[would] not be accepting any

future communications from [her]." *Id.* at 10.  The letter stated that it would "remain in effect

until at least June 30, 2022." *Id.* at 10–11.  The letter explained that it was issued "[p]ursuant to

[Plaintiff's] blatant misconduct and unruly behavior which caused a disturbance at the February 9,

2022, Board of Education meeting." ECF 49-1, at 1.

**D.    Plaintiff is initially convicted of two of the counts against her in district court before ultimately being acquitted on all counts in circuit court.**

Plaintiff was convicted of disturbing the peace (count three) and failing to obey a lawful

order (count four) in the District Court for Cecil County on April 6, 2022. ECF 30, at 11–13.  She

was acquitted on all other counts.  *Id.* at 30.  Several uniformed officers from the Elkton Police

Department were present in the court room for the trial, and Plaintiff asserts that the officers were

present in an attempt to "intimidate" the district court judge. *Id.* at 11.

Devine testified at the trial that the unmasked observers in the lobby for the February 9,

2022, meeting were loud and disruptive, with Plaintiff's "voice being the predominate voice" that

could be heard in the meeting.  *Id.* at 12.  He further testified that members of the Board signaled

that they were bothered by the noise from the lobby.  *Id.*  Plaintiff claims that this testimony was

false and that it was negated by video evidence and other witness testimony at trial.  *Id.*

Plaintiff appealed her convictions and was acquitted on all counts in circuit court on

September 12, 2022. *Id.* at 13.  According to Plaintiff:

> The Circuit Court judge found on the record that [D]efendant Devine did not have
> probable cause to believe a crime had been or was being committed at any time

6

before he arrested [P]laintiff Somers, *i.e.,* there was no disturbance of the peace. The Court also found that [D]efendant Devine did not have any lawful authority to require [P]laintiff Somers to leave the building when he ordered her to leave, *i.e.,* his order was unlawful.

*Id.*

### E.   Plaintiff files suit in this Court.

Plaintiff filed her original complaint in this Court against all Defendants on January 13, 2023, ECF 1, and filed her first amended complaint on April 4, 2023, ECF 30. She brings a total of sixteen claims against Defendants. ECF 30, at 23–48. All of Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983. *Id.* at 23–33. Specifically, Plaintiff brings claims alleging violations of her First Amendment rights to freedom of speech (count one) and freedom of assembly (count two) against Elkton, Cecil County, and each individual Defendant in both their official and personal capacities. *Id.* at 23–27. She brings an additional count asserting unlawful retaliation under the First Amendment against Devine alone (count three). *Id.* at 27–29. The remaining federal claims all allege violations of the Fourth Amendment against Devine: unlawful seizure of the person (count four), use of excessive and unreasonable force (count five), and malicious prosecution (count six). *Id.* at 29–33. Because the Court ultimately declines to exercise supplemental jurisdiction over Plaintiff's ten state law claims, as explained below, they need not be summarized in detail here. *See* ECF 33–43.

## II.   **LEGAL STANDARD**

Under Rule 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570).

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007). At the same time, the Court must "prevent

factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)).

In this case, three of the four motions are styled as motions to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. *See* ECFs 39, 41, 42. When presented with a motion to dismiss or, in the alternative, for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In such a case, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*; *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974) (citing *Carter v. Stanton*, 405 U.S. 669, 671 (1972)). Reasonable opportunity requires that the Court give the parties some notice that (1) "it is treating the 12(b)(6) motion as a motion for summary judgment," and (2) that the opposing party has "the consequent right . . . to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (internal citations omitted); *see also Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

In addition to Defendant Elkton's motion to dismiss, ECF 34, the Court construes the motions filed by Defendant Cecil County, ECF 41, and by Defendants Roush, Buckley, and the Board, ECF 42, as motions to dismiss under Rule 12(b)(6). In evaluating a motion to dismiss, the Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th

Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis omitted) (citing *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

Here, in considering the motions to dismiss, the Court will consider the complaint itself as well as two additional integral documents referenced by the complaint and provided by the parties whose authenticity is unquestioned: the letter presented by Plaintiff as "medical documentation" relating to her inability to safely wear a mask, ECF 42-2, at 1, and the "No Trespass" letter sent to Plaintiff by Defendant Buckley, ECF 49-1, at 1. *See* ECF 30, at 5 (referencing and summarizing the medical documentation letter); *id.* at 10–11 (referencing and quoting the "No Trespass" letter); *see generally* ECF 49 (raising no question of authenticity with respect to the medical documentation letter provided by the Board); *see also* ECF 49-1 (Plaintiff providing the "No Trespass" letter as an attachment). The medical letter is integral as Plaintiff's claims rely in part upon the sufficiency of the letter in supporting an alleged exemption from the mask requirement, *see* ECF 30, at 23–27, and the "No Trespass" letter is integral as Plaintiff's claims against Buckley are based upon his issuance of that letter, *see* ECF 30, at 24–26.

The Court will construe Devine's motion, ECF 39, as a motion for summary judgment. The parties have been given a reasonable opportunity to present material pertinent to Devine's motion, as evidenced by Devine's clear captioning of the motion and by Plaintiff's opposition and supplemental exhibits in opposition to Devine's motion. *See* ECF 39 (clearly labeling the motion as a motion to dismiss or, in the alternative, for summary judgment); ECF 45-1 through 45-5 (placeholders for video exhibits filed by Plaintiff). Both parties have submitted exhibits. *See, e.g.,* ECF 39-2 (Devine affidavit); ECF 39-5 (transcript excerpt of Plaintiff's district court hearing);

ECF 39-6 (transcript excerpt of Plaintiff's circuit court hearing); ECF 48 (granting Plaintiff's request at ECF 47 to file physical exhibits). Furthermore, Plaintiff has offered no opposition to converting this motion to one for summary judgment and has made no claim that the motion cannot be addressed without discovery. *See* ECF 45, at 15 (stating that "no discovery has occurred" but failing to assert that this is in any way prejudicial to Plaintiff). This is particularly noteworthy given that Plaintiff *did* oppose the conversion of the County's motion into one for summary judgment on the grounds that more time was needed for discovery. *See* ECF 52, at 4. In opposing the conversion of the County's motion, Plaintiff explained:

> To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *Harrods* [*Ltd. v. Sixty Internet Domain Names*], 302 F.3d [214,] 244–45 [(4th Cir. 2002)] (discussing affidavit requirement of former Rule 56(f)).

*Id.* at 4–5. Plaintiff has made no such argument, nor provided any such affidavit in opposition to Devine's motion. *See* ECF 45, at 5 (making no such argument). This, combined with the exhibits submitted by both Plaintiff and Devine, lead the Court to find that conversion to a motion for summary judgment is appropriate with respect to Devine's motion.

## III.   ANALYSIS

Defendants each argue that some or all of the claims brought against them should be dismissed. *See* ECFs 34, 39, 41, 42. The Court will begin by addressing the motions filed by Elkton, Cecil County, the Board, Roush, and Buckley, construed as motions to dismiss, before turning to the motion filed by Devine, construed as a motion for summary judgment.

Claims brought under 42 U.S.C. § 1983 provide a plaintiff with an avenue to "vindicat[e] federal rights." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Section 1983 allows suits against any "person" acting under color of

11

state law who subjects the plaintiff to "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Claims brought under § 1983 are analyzed differently depending upon whether the plaintiff brings the claim against an individual, an entity, or a municipality.

It is well established that "[c]ounties and other local governments cannot be held liable under § 1983 for injuries inflicted by their employees or agents based on [the] theory of *respondeat superior*." *Borkowski v. Balt. Cnty.*, 414 F. Supp. 3d 788, 813 (D. Md. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). There are four ways in which a municipality may be liable under § 1983:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Put another way, "municipal liability results only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987) (quoting *Monell*, 436 U.S. at 692–94). Thus, a person with final municipal policymaking authority must be in some way involved in the challenged conduct in order to hold a municipality liable under § 1983. *Id.*

Against all Defendants but Devine, Plaintiff's federal claims center exclusively on alleged violations of her First Amendment rights to freedom of speech and freedom of assembly. ECF 30, at 23–27. "The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 891–92 (2018). In considering a First Amendment free speech claim,

a court first "determines whether the 'speech [was] protected by the First Amendment'" before "'identify[ing] the nature of the forum' in which the speaker spoke" and "ask[ing] 'whether the justifications for exclusion from the relevant forum satisfy the requisite standard.'" *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (first alteration in original) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)). The type and extent of permissible restrictions on speech allowed under the First Amendment vary depending on the type of forum in which the speech occurs. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45–46 (1983).

"The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980) (quoting *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937)). As with freedom of speech cases, "the Supreme Court has applied a time, place, and manner test to governmental restrictions in freedom-of-assembly cases." *Beahn v. Gayles*, 550 F. Supp. 3d 259, 277 (D. Md. 2021).

School board meetings are generally considered "limited public fora" for the purposes of First Amendment analysis. *Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021); *Wood v. Arnold*, 321 F. Supp. 3d 565, 582 (D. Md. 2018), *aff'd*, 915 F.3d 308 (4th Cir. 2019). When the forum in question is a limited public forum, the appropriate standard to apply for the purposes of First Amendment analysis depends on who the speaker in question is. *See Goulart v. Meadows*, 345 F.3d 239, 250 (4th Cir. 2003). When "the government excludes a speaker who falls within the class to which a designated limited public forum is made generally available," the "internal standard" applies, and courts analyze any restrictions on speech under strict scrutiny. *Id.* (citation omitted) (cleaned up). However, "[u]nder the external standard, a limited public forum is treated as a nonpublic forum, such that government control of speech must be viewpoint neutral and

13

reasonable in light of the objective purposes served by the forum." *Wood*, 321 F. Supp. 3d at 582 (citing *Goulart*, 345 F.3d at 250). "[O]nce a limited forum has been created, entities of a 'similar character' to those allowed access may not be excluded." *Goulart*, 345 F.3d at 250 (citation omitted).

### A.   Plaintiff's § 1983 claims against the Town are dismissed.

Plaintiff claims that the Town is liable under § 1983 for First Amendment constitutional violations committed by Officer Devine because Devine "acted as a municipal policymaker for the Town of Elkton" when he and Roush denied Plaintiff access to the school board meeting. ECF 30, at 23, 25. The Town counters that Plaintiff has not pled any facts that support an inference that Devine was a final policymaker for the Town, and, as such, the § 1983 claims against the Town should be dismissed. ECF 34-1, at 4–6.

"A 'final policymaker' for the purposes of municipal liability is someone who has 'the responsibility and authority to implement final municipal policy with respect to a particular course of action.'" *Lytle*, 326 F.3d at 472 (quoting *Riddick v. School Bd. of Portsmouth,* 238 F.3d 518, 523 (4th Cir. 2000)). Furthermore, "the type of policymaking authority which can invoke § 1983 liability is 'authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government.'" *Id.* (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987)). Examples of officials that have been held to be "final policymakers" for § 1983 purposes include City Managers, *id.*, Police Chiefs, *Spell*, 824 F.2d at 1394–95, and Sheriffs, *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784–85 (1997). Though Plaintiff is correct that "a policymaker . . . may delegate its final policymaking authority," ECF 36, at 8 (quoting *Hunter v. Town of Mocksville,* 897 F.3d 538, 555 (4th Cir. 2018)), Plaintiff does not provide, nor is this Court aware of, any case in which a police officer without supervisory authority has been found to be a final policymaker. *See* ECF 36, at 6–10 (providing

no such cases); *see also Owens v. City of Pennsboro*, Civ. No. 1:20-55, 2021 WL 496776, at *3 (N.D.W. Va. Feb. 10, 2021) (finding that police officer was not a final policymaker and merely exercised individual discretion in carrying out his duties in making arrests and performing his job); *Smith v. City of Pennsboro*, Civ. No. 1:20-54, 2021 WL 7448642, at *3 (N.D.W. Va. Feb. 9, 2021) (same).

Of course, a lack of precedent indicating that a non-supervisory police officer can be a final policymaker is not, in and of itself, dispositive on the issue, but the Court is also not persuaded by Plaintiff's delegation argument on its own merits. Plaintiff argues that the Board had final policymaking authority as to how to enforce the mask mandate and that the Board delegated that authority to Devine—and therefore, impliedly, his employer, the town—by stationing Devine at the door to the meeting and being fully "aware that Roush and Devine were enforcing the mask mandate for the Board as the two men were stationed at the entrance doors during Board meetings in plain sight of the Board's members." ECF 36, at 8. The logical leaps required to reach such a conclusion are too broad. Even taking all inferences in favor of Plaintiff, the mere fact that some number of Board members were able to see that Devine was standing at the door does not suffice to indicate that Devine had been delegated the "authority to set and implement general goals and programs of municipal government," let alone that his employer was liable for his actions under that delegated authority. *Lytle*, 326 F.3d at 472. Plaintiff has not pled any facts that demonstrate that Devine or any other actor in this scenario had the authority to "implement final municipal authority" with respect to the mask requirement, and Plaintiff fails to offer any fact that suggests a theory of liability for the Town other than that it employed Devine. *Id.*; *see* ECF 30, at 4–9 (making no other argument for the Town's liability). Ultimately, this argument amounts to nothing

more than a *respondeat superior* theory of liability, which is insufficient as a matter of law to impose liability on a municipal defendant under § 1983. *See Borkowski*, 414 F. Supp. 3d at 813.

Accordingly, the Town cannot be liable under § 1983 for any of Officer Devine's actions, and counts one and two of the complaint are dismissed with prejudice with respect to the Town.

**B.     Plaintiff's § 1983 claims against Roush, Buckley, and Cecil County are dismissed.**

There is a dispute between the parties regarding what entity employed Roush and Buckley. Plaintiff asserts in her complaint that Roush and Buckley were employed by the County, while Cecil County, the Board, Roush, and Buckley assert that they were employed by the Board. *See* ECF 30, at 3 (asserting in complaint that Buckley and Roush were employees of the County); ECF 42-1, at 2 n.1, n.3 (asserting that Roush and Buckley were Board employees); ECF 41-1, at 15 (stating that Roush and Buckley were Board employees, not employees of the County); ECF 52-1 (arguing that the employer of Roush and Buckley is a material fact in dispute). Though the relevant Defendants make a strong argument in their motions, in considering a motion to dismiss, the Court looks only at the allegations in the complaint, takes all well-pled factual allegations[6] as true, and draws all reasonable inferences in favor of the Plaintiff. *Washington*, 58 F.4th at 170. Therefore, the Court will proceed in this analysis as if Roush and Buckley were employees of Cecil County at the time the relevant events took place.

---

[6] The County argues that the Plaintiff's claim in her complaint that Roush and Buckley were employed by the County is a legal conclusion, not a fact, and the Court therefore need not take it as true. ECF 41-1, at 7–8. Undoubtedly, there are scenarios in which the employment relationship between parties is a legal conclusion. *See, e.g., Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1045 (5th Cir. 1987) (holding that a determination "employee status" under the Fair Labor Standards Act is accurately labeled as a legal conclusion in the context of appellate review). This is not the case here, however. Here, Plaintiff's allegation that Roush and Buckley worked for the County functions as a fact.

16

With that in mind, the Court will analyze the official capacity claims against Roush and Buckley as claims against the County as their alleged employer. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Therefore, the counts brought against Roush and Buckley in their official capacities will merge with those brought against the County on the same claims, while the individual capacity claims will be analyzed separately.

> 1. *Plaintiff's § 1983 claims against Roush in his individual capacity are dismissed.*

Plaintiff alleges that Roush violated her rights to free speech and freedom of assembly under the First Amendment by denying her access to the school board meeting. ECF 30, at 23–27. Roush argues that "[a]s a matter of law, Plaintiff was not allowed to enter the Board meeting room at that time without wearing a face covering," and, as such, Roush did not violate Plaintiff's rights by denying her access. ECF 42-1, at 8–11.

As a threshold matter, it is worth noting that this Court and courts across the country have held that mask mandates do not violate the First Amendment's guarantees of freedom of expression or freedom of association simply by requiring that individuals wear masks in public places. *See Denis v. Ige*, 538 F. Supp. 3d 1063, 1078–80 (D. Haw. 2021) (finding that Hawaii's mask mandate violated neither right to free speech nor right to free assembly); *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 236–37 (D. Md. 2020) (finding that mask requirement did not violate right to free speech), *aff'd in part, appeal dismissed in part*, No. 20-2311, 2022 WL 1449180 (4th Cir. May 9, 2022). Here, the mask mandate in question simply required that individuals wear masks on school property during the relevant timeframe. COMAR 13A.01.07.03 (2022). As such, there is no freedom of speech or assembly violation inherent in the law itself.

The question, then, is whether the way in which Roush enforced the law infringed upon Plaintiff's rights. According to Plaintiff, Roush wrongfully denied her access to the school board meeting even though she met an exception of the mask requirement, and thus, he acted unlawfully when he denied her access to the meeting and violated her First Amendment rights. ECF 30, at 23–27. This argument must fail, however, because Plaintiff has pled no facts that indicate that Roush was wrong in deciding that the exception did not apply to Plaintiff.

The mask requirement in question required individuals to wear masks in school board facilities but allowed an exception for "[a]ny person with a physical or mental impairment documented by a physician as preventing the person from safely wearing a face covering." COMAR 13A.01.07.03 (2022). While Plaintiff provided Roush with a note from a healthcare provider, the note failed to in any way prove that she fell under the claimed exemption.[7] First, the note was from a nurse practitioner, not a physician, as required by the statute. *See* ECF 42-2, at 1 (showing signatory as "Rizwana Ahmed NP"). Second, the note did not state that Plaintiff was unable to safely wear a mask; it merely stated that she *reported* that she experienced difficulty breathing. *Id.* ("Brooke *states* she is unable to wear a mask due to difficulty breathing . . ." (emphasis added)). It included no assessment from any medical professional that there was any safety concern involved with Plaintiff's wearing of a mask. *See id.* Further, the note was several months old and referenced that Plaintiff's claimed symptoms were reportedly worsened by her pregnancy, but she was no longer pregnant on the date she presented the note to Roush. *See id.*;

---

[7] Though the complaint repeatedly characterizes this note as sufficient to meet the requirements of the exception to the mask requirement, such a determination is a legal conclusion, rather than a factual assertion. *See, e.g.,* ECF 30, at 5, 18. To the extent that the complaint and the letter itself are in conflict, "the exhibit prevails." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *compare* ECF 30, at 18 (characterizing the letter as a "physician letter"), *with* ECF 42-2, at 1 (showing that the letter was signed by a nurse practitioner).

(referencing Plaintiff's pregnancy and dated June 11, 2021); ECF 30, at 30 (referring to Plaintiff as a "recent mother"). Thus, Plaintiff has failed to state facts that suggest that Roush's determination that Plaintiff was not exempt from the mask requirement was in error.[8]

Roush cannot be faulted for enforcing a valid law meant to protect the public health.[9] Plaintiff has failed to state a claim for either First Amendment violation against Roush, and the counts against Roush in his personal capacity are dismissed with prejudice.

2.    *Plaintiff's § 1983 claims against Buckley in his individual capacity are dismissed.*

Plaintiff claims that Buckley violated her First Amendment rights to freedom of speech and freedom of assembly "when he made a meaningful and conscious choice to ban [Plaintiff] from school properties and to prevent her from making communications to the Board of Education for Cecil County without just cause." ECF 30, at 24, 26. Buckley argues that the ban on Plaintiff was lawful and appropriate and did not violate Plaintiff's rights, or, alternatively, that he is entitled to qualified immunity. ECF 42-1, at 11–17. The qualified immunity argument is dispositive.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). When assessing a claim of entitlement to qualified immunity, courts apply a two-part test. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under the first prong, courts determine

---

[8] Though Plaintiff claims Roush should have taken it upon himself to immediately call Plaintiff's doctor's office after hours to inquire about the note and her potential qualifications for the exemption, ECF 49, at 18, she points to nothing in the regulation that required Roush to undertake additional investigation to prove or disprove the existence of Plaintiff's purported exempt status.

[9] It is also worth noting that Roush did not completely deny Plaintiff access to the meeting; he merely denied her access *without a mask*. He also offered her an accommodation in the form of watching a livestream of the meeting in the lobby without wearing a mask. ECF 30, at 6–8.

"whether a constitutional right would have been violated on the facts alleged," and under the second prong, whether that constitutional right was clearly established. *Saucier*, 533 U.S. at 200. As to the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law." *Id.* at 202. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Though often fashioned as a test in two parts, the Court may consider either prong of the test first. *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *see also Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Here, Plaintiff has not pled that Buckley violated a "clearly established right." "A school board [] has inherent authority to restrict access to the property that it controls." *Cole v. Buchanan Cnty. Sch. Bd.*, 328 F. App'x 204, 209 (4th Cir. 2009). This includes "broad authority and responsibility for assuring that individuals conduct themselves appropriately while on school grounds." *Id.* (citing *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir.1999)). It is well-established that "[a] school board's authority encompasses the authority to remove or bar from entry an individual who threatens the safety of students or staff, or who disrupts the orderliness of the educational process." *Id.* The Fourth Circuit has repeatedly found that school board members are entitled to qualified immunity for imposing bans on individuals from school board property who posed a threat to the orderly operations thereof. *See, e.g., Davison v. Rose*, 19 F.4th 626, 641 (4th Cir. 2021) (finding that school board officials were entitled to qualified immunity for imposing a ban on father who made "aggressive" and "intimidating" remarks as well as verbal "personal

20

attacks" on school board members in criticizing school system); *Cole*, 328 F. App'x 204 at 210–11 (finding that school board officials were entitled to qualified immunity for imposing a ban on reporter for entering school and taking photographs without permission).

To properly assess the reasonableness of Buckley's conduct, the Court must consider Maryland's laws regarding the authority of a school board to restrict access to school property. *See Cole*, 328 F. App'x 204 at 208–09 (stating that an analysis of state law "regarding the authority of school boards to control access to school grounds" is "necessary to determine the objective reasonableness of the Board's conduct" in assessing qualified immunity regarding a school property ban). The Maryland Code provides that a school board "may deny access to the buildings or grounds of the institution to any other person who . . . [a]cts in a manner that disrupts or disturbs the normal educational functions of the institution." Md. Code Ann. Education ("Educ.") § 26-102(b)(3). The Fourth Circuit has previously upheld the removal of individuals from school grounds pursuant to this provision in the face of Free Speech challenges. *See Grattan v. Bd. of Sch. Comm'rs of Balt. City*, 805 F.2d 1160, 1161–64 (4th Cir. 1986) (upholding removal of teachers' union representative under earlier version of Educ. § 26-102(b)(3) from passing out union flyers in school parking lot after he was asked to leave).

This Court's reasoning in *Wood v. Arnold* is instructive. 321 F. Supp. 3d at 582–83. Applying the two-tiered "internal" and "external" standards to the limited public forum of school property outside of school hours, the Court rejected a student's father's free speech challenge to a ban issued under Educ. § 26-102(b)(3). *Id.* at 583. In considering whether the "internal" or "external" standard should apply, the Court reasoned that the father was not "of similar character" as the other members of the "class for whom the limited public forum is generally available" (*i.e.*, parents attending parent-teacher conferences, after-school performances, and other school-

affiliated activities) because the father, "unlike all other parents for which the forum is open, caused school officials to be concerned about safety at the school." *Id.* at 582–83. Therefore, the ban on the father need not survive a strict scrutiny analysis under the "internal standard"; it need only "be viewpoint neutral and reasonable in light of the objective purpose of the limited public forum." *Id.* at 583. The Court found the ban in that case to be "reasonable in order to ensure that [the father] did not disrupt school-related functions reserved for other parents." *Id.* at 583.

Here, the entirety of the factual allegations against Buckley are that he sent a "No Trespassing" letter to Plaintiff on February 14, 2022, that stated that "until at least June 30, 2022," she "[would] no longer be allowed on Cecil County Board of Education premises" and that the Board "[would] not be accepting any future communications from [her]." ECF 30 at 10–11. The letter specifies that it was issued "[p]ursuant to [Plaintiff's] blatant misconduct and unruly behavior which caused a disturbance at the February 9, 2022, Board of Education meeting." ECF 49-1, at 1.

Buckley was not present at the February school board meeting, nor is there any allegation that he was at all involved at the events of that night. *See id.* at 10–11 (mentioning Buckley only in the context of sending the "No Trespassing" letter). At the time Buckley sent the letter, Plaintiff had been arrested and charged with six criminal offenses related to the events that unfolded at the school board meeting. *Id.* at 11.

Given the information that Buckley would have had at the time the letter was issued, it would not have been at all clear to a reasonable person in his position that issuing the "No Trespassing" violated Plaintiff's rights. Such action is clearly contemplated by Educ. § 26-102(b)(3), and courts have upheld similar actions in response to disruptive adults. *See Grattan*, 805 F.2d at 1161–64; *Wood*, 321 F. Supp. 3d at 582–83. Buckley could very reasonably have

22

looked at the Court's decision in *Wood* and reasoned that, given the disruption Plaintiff reportedly caused at the school board meeting (and Buckley, having not attended the meeting himself, would only had the reports of Roush and Devine on which to rely), a ban of Plaintiff from school board property would only be required to be "viewpoint neutral and reasonable in light of the objective purpose of the limited public forum." 321 F. Supp. 3d at 583. Regardless of whether this decision was correct, it was not unreasonable, and "[o]fficials are not liable for bad guesses in gray areas." *Maciariello*, 973 F.2d at 298. Given the stated reason for the ban (Plaintiff's disruptive conduct at the school board meeting), the limited duration of the ban[10] (just over three months), and the Board's authority to take such action, it cannot be said that Buckley was violating Plaintiff's clearly established rights at the time he issued the letter. As such, he is entitled to qualified immunity.

Because Buckley is entitled to qualified immunity on the facts as alleged, the claims against him in his personal capacity must be dismissed with prejudice.

3.     *Plaintiff's § 1983 claims against Cecil County and the official capacity claims against Roush and Buckley are dismissed.*

Plaintiff claims that the County is liable under § 1983 for violations of her First Amendment rights to freedom of speech and freedom of assembly committed by Roush and Buckley because Roush and Buckley were "acting as [] municipal policymaker[s] for Cecil County." ECF 30, at 23–27. Because Plaintiff has not pled a claim that Roush violated her First Amendment rights, as explained above, she has also failed to plead a claim that the County violated those rights based on Roush's conduct.

---

[10] Though Plaintiff makes much of the words "at least" in Buckley's letter in her opposition to Buckley's motion, ECF 49, at 24, there is no allegation in the amended complaint that the ban lasted beyond this timeframe, *see* ECF 30, at 10–11. Regardless, Plaintiff bases her claim against Buckley on his issuance of the letter and implementation of the ban, ECF 30, at 23–26, and at the time the letter was issued, Buckley could not have possibly believed it was unreasonable to set a date at which to reevaluate (and impliedly rescind) the ban.

As to Buckley's conduct, Plaintiff fails to plead a § 1983 claim against the County because she fails to provide any facts that indicate that Buckley is a final policymaker for the County. As discussed above, a final policymaker "is someone who has 'the responsibility and authority to implement final municipal policy with respect to a particular course of action,'" *Lytle*, 326 F.3d at 472 (quoting *Riddick*, 238 F.3d at 523), and "the type of policymaking authority which can invoke § 1983 liability is 'authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government.'" *Id.* (quoting *Spell*, 824 F.2d at 1386). The only apparent fact Plaintiff offers in support of her legal conclusion that Buckley was a final policymaker is Buckley's job title: "Associate Superintendent for Administrative Services for Cecil County Public Schools." ECF 30, at 3. But job title alone is not enough to plead final policymaking authority. *See Johnson v. City of Fort Worth*, Civ. No. 4:14-1016-Y, 2021 WL 12188343, at *5 (N.D. Tex. Mar. 29, 2021) ("[P]olicymaking authority of chiefs of police within their own department is not something that can be inferred from their title alone . . ." (citation omitted)); *Huemer v. Santa Cruz Cnty. Animal Shelter Found.*, Civ. No. 21-07372, 2022 WL 6837714, at *5 (N.D. Cal. Oct. 11, 2022) ("[A]bsent other factual allegations the Court cannot infer from [an individual's] title alone that she is a policymaker."). Though Buckley's job title was one of "Associate Superintendent"—a seemingly important position—when he issued a letter from the Board of Education, this fact does not necessarily indicate that he had "authority to set and implement general goals and programs" for the County. *Spell*, 824 F.2d at 1386. As such, Plaintiff has not pled facts that demonstrate that the County is liable for Buckley's actions.

Plaintiff's claims against the County, including the official capacity claims against Roush and Buckley, are dismissed with prejudice for failure to state a claim.

**C.**      **Summary judgment is granted in favor of Officer Devine on counts one through six.**

Plaintiff brings six federal claims against Devine under § 1983 alleging violations of Plaintiff's First, Fourth, and Fourteenth Amendment rights.[11]  ECF 30, at 23–33.   Specifically, Plaintiff alleges that Devine violated her First Amendment rights to free speech and free assembly, arrested her in retaliation for her protected speech in violation of the First Amendment, unlawfully seized her in violation of her Fourth Amendment rights, used excessive force against her in violation of her Fourth and Fourteenth Amendment rights, and caused a malicious prosecution to proceed against her in violation of her Fourth Amendment rights.  *Id.*  Devine argues that he did not violate any of Plaintiff's constitutional rights, or, alternatively, that he is entitled to qualified immunity.  ECF 39-1, at 3.  After reviewing the parties' briefings and the evidence submitted by the parties, the Court finds that Devine is entitled to summary judgment on all counts.

1.      *Defendant Devine is granted summary judgment on Plaintiff's First Amendment free speech and freedom of association claims.*

The Court first turns to Plaintiff's claims that Devine violated her rights to free speech and free assembly.  The crux of these claims is the same as that of the First Amendment claims brought against Roush, *see* ECF 30, at 23–27, and thus, they must fail for the same reasons.  As explained above, Devine cannot be said to have violated Plaintiff's rights by appropriately enforcing a valid

---

[11] Though the complaint does not specifically bring any claims under the Fourteenth Amendment, the substance of Plaintiff's excessive force count indicates claims brought under the Fourteenth Amendment as well as under the Fourth Amendment.  *See* ECF 39-1, at 17–18 (arguing that because the Fourth Amendment applies only to excessive force claims based on events that occur prior to and during an arrest, Plaintiff failed to plead a claim under the Fourth Amendment for the events that occurred at the courthouse after Devine arrested Plaintiff).  As Plaintiff argues, however, claims should not be dismissed on technicalities when there is no prejudice to the opposing party, and Devine here clearly was not prejudiced by Plaintiff's mislabeling of the claim as Devine argued against the implied Fourteenth Amendment claim in his initial opposition.  ECF 45, at 38–39.  Accordingly, the Court will perform the analysis as if Plaintiff had brought the relevant claim alleging a violation of the Fourteenth Amendment.  The outcome will be the same regardless.

law.[12]   Furthermore, for this very same reason, Devine's conduct did not violate any clearly established right, and Devine is also entitled to qualified immunity on these counts.   Thus, summary judgment is granted in favor of Devine on counts one and two.

2.   *Defendant Devine is granted summary judgment on Plaintiff's First Amendment retaliation claim and Plaintiff's Fourth Amendment unlawful seizure claim.*

The qualified immunity inquiry is dispositive for Plaintiff's First Amendment retaliation claim and Plaintiff's Fourth Amendment unlawful seizure claim, and the qualified immunity analyses for these claims are inextricably linked as the two claims are based on the same conduct. *See* ECF 30, at 27–30.   Plaintiff bases both of these counts on Devine's arrest of Plaintiff after she disagreed with (and argued with) Devine in the lobby of the building where the school board meeting was being held. *Id.*   According to Plaintiff, Devine arrested Plaintiff without probable cause purely in retaliation for her protected speech opposing the mask mandate (*e.g.*, statements such as "this is ridiculous" and "why are you so devoted to that muzzle?"), her response of "no" to Devine's request that the attendees in the lobby keep the noise level down, and the fact that Plaintiff recorded Devine's actions. *Id.*

"The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted).   As for the unlawful seizure claim, "[t]he Court, for the purposes of this motion, accepts that a right to be free from arrest except upon probable cause is a legally established right

---

[12] Considering the video evidence submitted by the parties, Devine's determination that Plaintiff was not exempt from the mask requirement was further bolstered by Plaintiff's admission to Roush and Devine that she wears a mask without issue "when there's a logical reason to wear a mask." Def. Ex. 2 Video 2, Devine Body Camera, 3:31–3:45.

that any reasonable police officer is charged with knowing." *Smith v. Reddy*, 882 F. Supp. 497, 499 (D. Md. 1995), *aff'd*, 101 F.3d 351 (4th Cir. 1996). However, these broadly established rights are not the proper standards to utilize in the qualified immunity inquiry as "the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). "The question thus becomes whether the officer's conduct was objectively reasonable"; that is, "whether an officer, acting under the circumstances as []he perceived them, reasonably could have believed that [his] action did not violate the constitutional rights asserted." *Smith*, 882 F. Supp. at 499 (first citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) then quoting *Gooden v. Howard Cnty.*, 954 F.2d 960, 965–66 (4th Cir. 1992) (en banc)); *see also Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988).

So long as Devine, "in light of clearly established law, could reasonably believe that [his] actions were lawful," he is entitled to qualified immunity. *Henry*, 652 F.3d at 531. Thus, the question before the Court is whether Plaintiff had a clearly established right to not be arrested after (1) refusing to comply with a public health regulation and voicing her disapproval of the regulation; (2) refusing to comply with an officer's lawful order to keep conversation at a reasonable volume; (3) and refusing to leave the premises after being repeatedly asked to do so by an officer. *See* ECF 30, at 4–9.

As established above, there is no challenge to the legality of the mask requirement itself, and Devine acted reasonably in denying Plaintiff access to the meeting based on her failure to comply with the mask requirement. In fact, Devine and Roush were not required to allow Plaintiff and the other unmasked attendees to remain on school board property at all since the regulation in

27

question required the wearing of masks at all times "while inside a school facility," including the lobby of such a facility.  COMAR 13A.01.07.03(A) (2022).

Devine's initial request that the lobby attendees keep the noise down was reasonable and lawful.  While Plaintiff questions the propriety of this order, there can be no good faith argument that Devine was not entitled to remind the attendees in the lobby that they were required to keep the volume at a reasonable level.  *See* ECF 45, at 19 (arguing that the attendees in the lobby were not making sufficient noise to disturb the school board meeting and warrant Devine's "keep it down" remark).  A simple reminder of the standard of behavior expected in a public setting can hardly be said to be an imposition on Plaintiff's civil rights.  As the circuit court judge said in Plaintiff's criminal case, "it certainly is appropriate to say ['*]keep it down[.']"  ECF 39-6, at 9. The next question, then, is whether Devine should have understood himself to be violating Plaintiff's rights when he ordered her from the building after she said "no" to his request to keep the volume down and then arrested her after she refused to leave the building.  *See* ECF 30, at 8– 9.

In order to succeed on a retaliatory arrest claim, a plaintiff must demonstrate a causal link between the arrest and the protected speech.  *Constantine*, 411 F.3d at 499.  But just because certain speech is protected as free speech does not mean than an officer cannot consider that speech in making a probable cause assessment.  *Reichle v. Howards*, 566 U.S. 658, 668 (2012) ("[An] officer may decide to arrest the suspect because his speech provides evidence of a crime or suggests a potential threat.").  "[T]he connection between alleged animus and injury may be weakened in the arrest context by a police officer's wholly legitimate consideration of speech."  *Id.* at 668.  Here, Devine was entitled to consider Plaintiff's refusal to follow his directive to keep the noise down in his assessment of the situation.  After Plaintiff's unequivocal refusal to "keep the noise down,"

it was reasonable for Devine to believe he was not violating Plaintiff's rights when he ordered her

to leave the property, especially when considering that the mask requirement technically extended

to the lobby of the building and Plaintiff was already in clear violation of that policy. Thus,

regardless of whether Devine's order for Plaintiff to leave the building was a "lawful order" for

the purposes of criminal analysis, Devine was reasonable in believing it to be such. *See Hulbert

v. Pope*, 70 F.4th 726 (4th Cir.), *cert. denied*, 144 S. Ct. 494 (2023) ("Because [the defendant

officer] reasonably could have believed that his orders to [the plaintiffs] were lawful, he is also

entitled to qualified immunity on their First Amendment retaliatory-arrest and Fourth Amendment

unreasonable-seizure claims."). When Plaintiff then repeatedly refused to comply with Devine's

order, it was reasonable for him to believe he had probable cause to arrest her for failure to obey a

lawful order and that doing so would not violate either her First or Fourth Amendment rights. *See

id.* Devine is therefore entitled to qualified immunity on both of these counts.

      None of this is to say that the Court finds that the interaction between Plaintiff and Devine

could not have proceeded differently. It is conceivable that the situation in the lobby outside of

the school board meeting could have been deescalated and resolved without an arrest. Perhaps

Plaintiff could have been given another opportunity to quiet down before being ejected from the

premises. But an officer need not perform their duties perfectly to be entitled to qualified

immunity. *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for

bad guesses in gray areas; they are liable for transgressing bright lines."). Even an officer who

violates a plaintiff's constitutional right is entitled to qualified immunity so long as that right is

not so clearly established "that every reasonable official would have understood that what he is

doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up) (citation

omitted). Here, because it was reasonable for an officer in Devine's position to believe he was not

violating Plaintiff's rights, he is entitled to qualified immunity, regardless of whether the situation could have been resolved differently. Because Devine is entitled to qualified immunity with respect to counts three and four, summary judgment is granted in his favor on those counts.

3.    *Defendant Devine is granted summary judgment on Plaintiff's excessive force claims under the Fourth and Fourteenth Amendments.*

Count five asserts that "defendant Devine twice used unnecessary and excessive force against [] [P]laintiff Somers, first when arresting [P]laintiff and second to force [P]laintiff Somers to wear a mask while in his custody." ECF 30, at 30. In considering an excessive force claim, the Court "employ[s] a standard of objective reasonableness, testing whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him." *Thomas v. Holly*, 533 F. App'x 208, 215 (4th Cir. 2013) (citing *Scott v. Harris,* 550 U.S. 372, 381 (2007)). "This standard mandates 'a careful balancing' of Fourth Amendment rights 'against the countervailing governmental interests at stake.'" *Wilson v. Flynn*, 429 F.3d 465, 467–68 (4th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This analysis must be conducted in light of the "totality of the circumstances" surrounding the incident, including "'the severity of the crime at issue,' whether the 'suspect poses an immediate threat to the safety of the officers or others,' and whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight'" as well as "[t]he extent of the plaintiff's injury." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (first quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989), then citing *Rowland v. Perry,* 41 F.3d 167, 174 (4th Cir. 1994)).

i.    Officer Devine is entitled to qualified immunity for his use of force during the arrest.

Plaintiff alleges that, in arresting her, Devine "gratuitously pulled [P]laintiff from a chair, threw her to the ground, violently twisted her arms and wrists, placed his knee and body weight into [P]laintiff's spine as she the laid on the floor and applied handcuffs too tightly to [P]laintiff's

wrists after twisting her arms behind her back." ECF 30, at 31. Devine counters that he "used no more force than necessary to detain [Plaintiff]." ECF 39-1, at 16.

The doctrine of qualified immunity occupies a controversial space in our legal system, particularly when it comes to cases of excessive force. *See, e.g.*, Osagie K. Obasogie & Anna Zaret, *Plainly Incompetent: How Qualified Immunity Became an Exculpatory Doctrine of Police Excessive Force*, 170 U. Pa. L. Rev. 407, 415–16 (2022) (arguing that "over time, qualified immunity morphed from a narrow theory of executive privilege into a specific theory to limit civil lawsuits against police officers who use excessive force"); Diana Hassel, *Excessive Reasonableness*, 43 Ind. L. Rev. 117, 118 (2009) ("[T]he qualified immunity doctrine has stretched the rationale underlying the defense to a breaking point. Instead of providing protection only to those government actors who violate the law unwittingly and reasonably, qualified immunity has metastasized into an almost absolute defense to all but the most outrageous conduct."). Any number of law review and newspaper articles highlight the ways in which the doctrine can allow law enforcement officers to escape liability for use of force that seem to a lay person to stretch beyond the unreasonable and into the unjustifiable. *See, e.g.*, Esther M. Schonfeld & Alexandra Weaderhorn, *Qualified Immunity: Does Law Enforcement Receive Too Much Protection from Personal Liability?*, N.Y. St. Bar J., Aug. 2020, at 28, 31 (arguing that qualified immunity "as applied, is unjust" and that "allows police brutality to go unpunished and denies victims[] their constitutional rights"). Legitimate concerns about the repercussions of qualified immunity in excessive force claims abound, but it appears to the Court that this case exemplifies the very reason for the doctrine.

"Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citation omitted). Qualified

immunity is intended to shield officers who act reasonably, "regardless of whether they have made a mistake of law or mistake of fact." *Ross v. Early*, 899 F. Supp. 2d 415, 426 (D. Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).   Given all the circumstances, it is clear that Devine was performing exactly the kind of reasonable "discretionary function" that the doctrine of qualified immunity was intended to protect. *Harlow*, 457 U.S. at 818 (1982).  The video evidence submitted to the Court shows that immediately before her arrest, Plaintiff said to Devine, "This is great" and also told Devine, "You're going to have to lift me out of this chair."  Def. Ex. 2 Video 3, Devine Body Camera, 1:18–1:23.  Plaintiff verbally opposed the arrest and refused to comply with Devine's instructions.  *Id.* at 1:33–1:40.  When Plaintiff did not stand up to be handcuffed at Devine's instruction, Devine began to lift her out of her chair, exactly as she told him he would have to in order to arrest her. *Id.* at 1:38–1:41.  Once she was on the ground, Devine pinned her to the floor with his legs for approximately one minute as he attempted to handcuff her. *See* Def. Ex. 3, Rosado Video, at 0:17–1:17.  He released her to allow her to stand immediately after successfully handcuffing her. *Id.* at 1:18–1:30.  Plaintiff has not specifically asserted that she was injured during the arrest, nor has she provided any evidence to that effect. *See* ECF 30, at 9–10 (describing Plaintiff's arrest and aftermath but making no mention of injury).

When faced with similar facts, the Fourth Circuit and this Court have found similarly situated officers to be entitled to qualified immunity. In *Pegg v. Herrnberger*, the Fourth Circuit found that a defendant police officer was entitled to qualified immunity when the plaintiff, whose "crime was not severe" was resisting arrest and sustained only minor injuries when the officer "briskly, but safely, took [the plaintiff] to the ground. . . . for less than a minute and no longer than the time [the officer] needed to handcuff him." 845 F.3d 112, 120 (4th Cir. 2017). As the Fourth Circuit held, "[a]n efficient, lawful arrest of a resisting suspect that causes the suspect to suffer

only de minimis injuries does not constitute excessive force." *Id.*  Similarly, in *Kenny v. Jones*, Judge Chasanow found that the defendant police officers were entitled to qualified immunity when they deployed pepper spray on a plaintiff while attempting to subdue and arrest him for trespassing and disorderly conduct after the plaintiff loitered at a bus stop for an hour and resisted arrest. Civ. No. DKC 2007-2421, 2008 WL 11425695, at *5 (D. Md. July 3, 2008).

While Plaintiff's "crime was not severe," much like the plaintiff in *Pegg*, the totality of the circumstances suggest that Devine's use of force was reasonable.  845 F.3d at 120.  Though Plaintiff was acquitted of resisting arrest at her trial in district court, ECF 45, at 37 n.12, her refusal to stand up, roll over, or put her hands behind her back when told she was under arrest make reasonable Devine's belief that she was resisting arrest. *See Omeish v. Kincaid*, 86 F.4th 546, 556–57 (4th Cir. 2023) (finding that the plaintiff's refusal to obey the officer's commands to exit the vehicle during a traffic stop and resisting "the officer's physical efforts to arrest her" constituted "resisting [the officer's] efforts to arrest her" for purposes of excessive force analysis). Plaintiff has asserted no injuries, not even the scrapes and bruises noted in *Pegg*. *See* ECF 30, at 9–10.  And like the defendant officer in *Pegg*, Devine restrained Plaintiff only a minimal amount of time on the floor, "perform[ing] a simple maneuver to ensure [Plaintiff's] compliance."  845 F.3d at 120.  This Court, then, follows the Fourth Circuit's clear precedent and finds that Devine is entitled to qualified immunity for Plaintiff's excessive force claim relating to the force used to effectuate her arrest.

      ii.      <u>Officer Devine is entitled to qualified immunity for his use of force in the courthouse.</u>

The factors for assessing a Fourteenth Amendment claim for excessive force are similar to those used in assessing a Fourth Amendment excessive force claim.  For a Fourteenth Amendment excessive force claim, "courts ask whether the officers' actions are objectively reasonable in light

of the facts and circumstances confronting them." *Lombardo v. City of St. Louis*, 594 U.S. 464, 466–67 (2021) (citation omitted). Factors to consider include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Though Plaintiff claims that Devine "violently grabbed [her] while she remained shackled . . . and threw her to the ground . . . then forced [her] to remain on the ground, handcuffed and shackled, for more than seven (7) minutes," when he took her to the courthouse to see the Commissioner, ECF 30, at 31, any reasonable jury viewing the video footage of the incident could see that Devine was nothing but reasonable in this interaction. Devine's body camera footage shows that Devine requested that Plaintiff wear a face mask inside the courthouse and asked her whether she would put it on herself or whether he should put it on her. Def. Ex. 2, Video 4, Devine Body Camera, 2:17–2:20; Pl. Ex. 4, Devine Body Camera, 13:47–13:50. After Plaintiff refused to wear the mask, Devine again told her to put it on. Def. Ex. 2, Video 4, Devine Body Camera, 2:41–2:43; Pl. Ex. 4, Devine Body Camera, 14:11–14:13. Eventually, Plaintiff told Devine to put the mask on her. Def. Ex. 2, Video 4, Devine Body Camera, 2:50–2:53; Pl. Ex. 4, Devine Body Camera, 14:20–14:23. Devine did so, making contact only with Plaintiff's ears and hair to loop the mask straps around her ears. Def. Ex. 2, Video 4, Devine Body Camera, 2:54–3:03; Pl. Ex. 4, Devine Body Camera, 14:24–14:33. Plaintiff immediately pulled the mask down below her mouth. Def. Ex. 2, Video 4, Devine Body Camera, 3:03–3:05; Pl. Ex. 4, Devine Body Camera, 14:33–14:35. When Devine reached towards the improperly situated mask, Plaintiff took a step away from him, and Devine grabbed Plaintiff's sweatshirt. Def. Ex. 2, Video 4, Devine

34

Body Camera, 3:05–3:14; Pl. Ex. 4, Devine Body Camera, 14:35–14:44. Devine did not succeed in pulling Plaintiff's mask back up; instead, Plaintiff sat on the ground. Def. Ex. 2, Video 4, Devine Body Camera, 3:14–3:16; Pl. Ex. 4, Devine Body Camera, 14:44–14:46. Once Plaintiff was sitting on the ground, Devine made no further physical contact with her. Def. Ex. 2, Video 4, Devine Body Camera, 3:16–10:30; Pl. Ex. 4, Devine Body Camera, 14:46–22:00. Plaintiff alleges no specific injuries related to this incident. ECF 30, at 10 (describing the events in the courthouse and making no allegation of injury). In fact, Devine took the extraordinary step of asking the District Court Commissioner to come to the lobby of the building to inquire into whether the Commissioner might continue with Plaintiff's initial proceedings despite Plaintiff's repeated refusal to wear a mask. Def. Ex. 2, Video 4, Devine Body Camera, 4:00–4:40; Pl. Ex. 4, Devine Body Camera, 15:30–16:10. This portion of the interaction showcased unquestionably reasonable behavior on the part of Devine.

Plaintiff actively refused to follow Devine's order to wear a mask, which was intended to protect the public health; she moved away from him when he attempted to correct the position of her mask; he touched her only briefly after she moved away from his attempt to correct her mask and ceased immediately once she sat on the ground; and Plaintiff again alleges no specific injuries. Given this context, it was reasonable for Devine to believe that he was not violating any of Plaintiff's clearly established constitutional rights. As such, he is entitled to qualified immunity, and summary judgment is granted in his favor on this count.

        4.    *Summary judgment is granted in favor of Devine on Plaintiff's Fourth Amendment malicious prosecution claim.*

Plaintiff's final federal claim against Devine is malicious prosecution. ECF 30, at 32–33. An essential element of a Fourth Amendment malicious prosecution claim is the absence of probable cause. *Asuncion v. City of Gaithersburg*, 73 F.3d 356, at *2 (4th Cir. 1996) (per curiam)

(unpublished). As such, Plaintiff's claim hinges on her assertion that there was no probable cause for Devine to arrest her. *See* ECF 30, at 32 (claiming that Devine arrested Plaintiff without probable cause). Regardless of whether there was truly probable cause to arrest Plaintiff, though, it has already been established that Devine acted reasonably in believing that there was probable cause to arrest Plaintiff. Therefore, because Devine's belief that he had probable cause to arrest Plaintiff was reasonable, he could not have reasonably understood himself to be violating one of Plaintiff's clearly established rights. As such, Devine is entitled to qualified immunity on this count, and summary judgment is granted in his favor.

### D. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

"Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain, 'certainly[ ] if the federal claims are dismissed before trial . . . the state claims should be dismissed' without prejudice." (alteration in original) (additional citation omitted) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). "Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–27 (1966).

Here, after dismissing or otherwise resolving the federal claims in this suit at this early stage, the Court declines to exercise supplemental jurisdiction over the remaining state claims in this case. This decision is only underscored by the novel state law issue raised by count eight: whether Article 40 of the Maryland Declaration of Rights includes the right to free assembly. *See* ECF 42-1, at 17 (explaining that, though the complaint brings a claim for violation of the right to free assembly under the Maryland Declaration of Rights, no such right appears in the text of Article

36

40).  As such, the state law claims of this case are better addressed by a state court, and this Court

declines to exercise jurisdiction over them.

## IV.   **CONCLUSION**

For the foregoing reasons, the motions of each Defendant, ECFs 34, 39, 41, 42, are

**GRANTED** with respect to counts one through six.  Summary judgment is granted on behalf of

Defendant Devine on counts one through six, and counts one and two are dismissed with prejudice

with respect to all other Defendants.  Plaintiff's remaining state law claims are **DISMISSED**

without prejudice.

A separate implementing order will issue.


Dated: <u>May 3, 2024</u>                                        <u>            /s/                    </u>

Brendan A. Hurson
United States District Judge